## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No.: _____

MAGMA POWER, LLC, a Florida
Limited Liability Company,

     Plaintiff,

v.

GEOALASKA, LLC, an Alaska Limited
Liability Company, IGNIS H2 ENERGY,
INC., a Texas Corporation, and
AMERICAN GEOPOWER, LLC, a
Delaware Limited Liability Company,

     Defendants.

_____/

## COMPLAINT FOR INJUNCTION AND DAMAGES

Plaintiff Magma Power, LLC ("Magma Power" or "Plaintiff"), by and through

undersigned counsel, brings this action against Defendants GeoAlaska, LLC

("GeoAlaska"), Ignis H2 Energy, Inc. ("Ignis"), and American GeoPower, LLC

("American GeoPower") (collectively, "Defendants") and alleges as follows, as

supported by the Affidavit of Richard McDonald filed concurrently herewith:

## INTRODUCTION

1.    This is a civil action for defamation, slander per se, libel per se, trade

libel, tortious interference with business relationships, and injurious falsehood; (2)

patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271(a)-

(c), specifically infringement of U.S. Patent No. 11,852,383 B2 ("the '383 Patent"), titled "Geothermal Power from Superhot Geothermal Fluid and Magma Reservoirs," issued on December 26, 2023, and U.S. Patent No. 12,326,278 B2 ("the '278 Patent"), titled "Geothermal Power from Superhot Geothermal Fluid and Magma Reservoirs," issued on June 10, 2025, both to inventors Greg Lindberg and Kimberly C. Conner, and both assigned to EnhancedGEO Holdings, LLC and both licensed to Magma Power, LLC; and (3) injunctive relief.  A true and correct copy of the '383 Patent is attached hereto as **Exhibit A,** and a true and correct copy of the '278 Patent is attached hereto as **Exhibit B**.

2.    The '383 Patent contains 20 claims covering revolutionary methods and apparatuses for pumping superhot geothermal fluid (SHGF) from underground magma reservoirs.  The '278 Patent comprises 25 claims covering cased wellbores and systems for generating superheated steam from magma reservoirs.  Magma Power holds exclusive rights to enforce both patents and all their claims.

3.    Defendants have engaged in a coordinated campaign to defame Magma Power and its principals while simultaneously preparing to infringe all claims of both the '383 Patent and the '278 Patent.  Upon information and belief, Defendants have conspired with American GeoPower, LLC to spread false and defamatory statements about Magma Power while claiming rights to use patented technologies that belong exclusively to Magma Power.

4.    On or about August 4, 2025, Defendants GeoAlaska and Ignis issued a press release announcing their intent to drill into magma reservoirs and generate

geothermal power at Mount Augustine and Mount Spurr in Alaska. This announced activity would directly infringe all 20 claims of the '383 Patent and all 25 claims of the '278 Patent, as any system for extracting geothermal fluid from magma reservoirs would necessarily require the pumping apparatus and methods claimed therein.

5.    Paul Craig, owner of GeoAlaska, has explicitly stated: "We don't need Magma Power, LLC to drill into magma and superhot geothermal fluids because we have the patents from the McBays (the owners of American GeoPower, LLC)." This statement demonstrates both Defendants' knowledge of Magma Power's patent rights and their willful intent to infringe based on false claims of authorization.

6.    Plaintiff seeks damages, including lost profits, reasonable royalties, enhanced damages under 35 U.S.C. § 284 for Defendants' willful infringement of both patents, and injunctive relief for Defendants' defamation campaign and planned infringement of all claims.

## THE PARTIES

7.    Plaintiff Magma Power, LLC, is a Florida limited liability company with its principal place of business located at 8875 Hidden River Parkway, Tampa, Florida 33637. Magma Power is the exclusive licensee of all rights, title, and interest in the '383 Patent and the '278 Patent, including the right to enforce the patents and pursue remedies for infringement of all claims.

8.    Defendant GeoAlaska, LLC is an Alaska limited liability company with a principal place of business at 2440 E. Tudor Road, Suite 230, Anchorage, Alaska 99507. Upon information and belief, GeoAlaska is developing geothermal resources

in Alaska and has publicly announced plans to drill into magma reservoirs, which would require the use of the pumping apparatus and methods covered by the patents.

9.    Defendant Ignis H2 Energy, Inc. is a Texas corporation with operations in Houston, Texas.  Upon information and belief, Ignis is a geothermal energy company that has partnered with GeoAlaska to develop geothermal projects in Alaska, which would infringe on the patents.  Ignis maintains offices and conducts business throughout the United States, including in the state of Florida.

10.    Defendant American GeoPower, LLC is a Delaware limited liability company with a principal place of business in Palo Alto, California.  Upon information and belief, American GeoPower is owned and controlled by David McBay and Thomas McBay, who have engaged in a systematic campaign to defame Magma Power while falsely claiming ownership of the patents.

## JURISDICTION AND VENUE

11.    This action arises under the United States Patent Laws, specifically 35 U.S.C. § 271 et seq., for infringement of the '383 Patent and the '278 Patent, as well as under state law claims for defamation and related torts.

12.    This Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1338(a) for the patent infringement claims, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

13.    Complete diversity exists between Plaintiff (a Florida LLC) and all Defendants (Alaska, Texas, and California entities), providing an independent basis for jurisdiction under 28 U.S.C. § 1332(a).

14.    This Court has personal jurisdiction over all Defendants consistent with the principles of due process and Florida's long-arm statute, Fla. Stat. § 48.193(1)(a). Defendants have defamed a Florida company, causing tortious injury within the state of Florida.  Defendants have also announced their intent to infringe the patents licensed to a Florida company, with full knowledge that such infringement would cause harm in Florida.  Florida's long-arm statute, Fla. Stat. § 48.193(1)(a), provides for personal jurisdiction over nonresidents who commit tortious acts within the state.    Specifically, § 48.193 (1)(a)(2) allows jurisdiction over a defendant who commits a tortious act in Florida, even if the defendant is not physically present in the state.    Courts have consistently held that telephonic, electronic, or written communications into Florida that give rise to a cause of action can satisfy this provision.  *Telesur v. DOT (SR), Inc.*, 100 So. 3d 1232 (Fla. 2nd DCA 2012).

15.    In defamation cases, the tort occurs where the defendant publishes the defamatory material.  In *Internet Solutions Corp. v. Marshall,* the Florida Supreme Court held that when a defendant publishes defamatory material on a website accessible to Florida residents, the defendant commits a tortious act within Florida under § 48.193..  Internet Solutions Corp. v. Marshall, 39 So. 3d 1201 (2010). Similarly, in *Caiazzo v. American Royal Arts Corp.*, 73 So. 3d 245 (Fla. 4th DCA 2011), the court held that defamatory statements targeting a Florida business and circulated within the state satisfied the long-arm statute.  These principles apply here, as the Defendants allegedly defamed a Florida company, causing reputational harm within the state.

16.    Moreover, § 48.193(1)(a)(6) grants jurisdiction when a defendant commits out-of-state actions that cause injury in Florida, so long as the defendant solicits or performs services in the state or places products into commerce that Florida residents use.  This provision is relevant to the Defendants' alleged intent to infringe patents licensed to a Florida company, as such infringement would foreseeably cause harm to the company in Florida.  *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So. 2d 716 (Fla. 4th DCA 1998).

17.    Venue is proper in this judicial district under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, and Plaintiff resides in this district.

18.    Florida courts apply the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), to determine whether intentional torts directed at a Florida resident establish sufficient minimum contacts.  Under this test, jurisdiction is proper if the defendant's conduct was intentionally aimed at the forum state and caused harm that the defendant knew would be felt there.  In *Renaissance Health Pub., LLC v. Resveratrol Partners, LLC*, 982 So. 2d 739 (Fla. 4th DCA 2008), the court found sufficient minimum contacts where defamatory statements were intentionally directed at a Florida corporation, causing harm to its reputation and business operations in Florida.  Similarly, in *Homeway Furniture Co. of Mount Airy, Inc. v. Horne*, 822 So. 2d 533 (Fla. 2nd DCA 2002), the court upheld jurisdiction over a nonresident defendant whose defamatory statements on an interactive website targeted a Florida company and were intended to harm its business.

19.     Here, the Defendants allegedly defamed and intended to infringe patents against a Florida company, knowing that the resulting harm would occur in Florida.  These actions establish the requisite minimum contacts for due process purposes.

## GENERAL ALLEGATIONS

### I.     The Patents and Their Claims

20.     On December 26, 2023, the United States Patent and Trademark Office duly and legally issued the '383 Patent to inventors Greg Lindberg and Kimberly C. Conner, who assigned it to EnhancedGEO Holdings, LLC.  EnhancedGEO then granted Magma Power, LLC a license to the patent.

21.      On June 10, 2025, the United States Patent and Trademark Office duly and legally issued the '278 Patent to inventors Greg Lindberg and Kimberly C. Conner, who assigned it to EnhancedGEO Holdings, LLC.  EnhancedGEO then granted Magma Power, LLC a license to the patent.

22.     Magma Power, LLC currently holds exclusive rights to enforce both patents and all their claims, which cover:

### A. The '383 Patent Claims 1-20:

a) **Claims 1-10**: A pumping apparatus for a borehole extending from a surface to an underground reservoir of superhot geothermal fluid (SHGF), including:

| **Claim 1:** | The basic pumping apparatus with a well screen, slidable casing, and draw pipe |
|---|---|

| | |
|---|---|
| **Claim 2:** | The apparatus wherein the slidable casing is repositioned by lowering |
| **Claim 3:** | The apparatus with a compressor and inlet pipe |
| **Claim 4:** | The apparatus using compressed air |
| **Claim 5:** | The apparatus with adjustable apertures in the end wall |
| **Claim 6:** | The apparatus with pneumatically-operated pipe collar seals |
| **Claim 7:** | The apparatus with a lift to change casing depth |
| **Claim 8:** | The apparatus with hydraulic ram or winch |
| **Claim 9:** | The apparatus with a pressure control valve |
| **Claim 10:** | The apparatus with well screen in unlined borehole |

b) **Claims 11-20**: Methods of pumping superhot geothermal fluid

through a borehole, including:

| | |
|---|---|
| **Claim 11:** | The basic method of repositioning, securing, increasing pressure, and conveying SHGF |
| **Claim 12:** | The method with repositioning back to initial position |
| **Claim 13:** | The method with pressure reduction before sliding |
| **Claim 14:** | The method using pressure control valve or expanding apertures |
| **Claim 15:** | The method using hydraulic ram for lowering |
| **Claim 16:** | The method with sealing the cavity |
| **Claim 17:** | The method using pneumatically-operated pipe collar seals |
| **Claim 18:** | The method providing compressed fluid |
| **Claim 19:** | The method using compressed air through inlet pipe |
| **Claim 20:** | The method with closing pressure control valve |

**B. The '278 Patent Claims 1-25:**

a) Claims 1-11: Cased wellbores for generating superheated steam, including:

| | |
|---|---|
| **Claim 1:** | A cased wellbore with first and second ends, fluid pathway, and wellhead with aperture for drill stem and connectors for saturated steam inlet and superheated steam outlet |
| **Claim 2:** | The cased wellbore with well casing and boiler casings |
| **Claim 3:** | The cased wellbore with first and second boiler casings defining fluid conduits |
| **Claim 4:** | The cased wellbore with specific cross-sectional area relationships forming annular volumes |
| **Claim 5:** | The cased wellbore where the annular volume is the first fluid conduit |
| **Claim 6:** | The cased wellbore with corrugated sidewalls at the magma end |
| **Claim 7:** | The cased wellbore with non-corrugated sidewalls at the surface end |
| **Claim 8:** | The cased wellbore with insulation layer around the second boiler casing |
| **Claim 9:** | The cased wellbore with inverted cross-sectional area relationships |
| **Claim 10:** | The cased wellbore with alternative fluid conduit configuration |
| **Claim 11:** | The cased wellbore using an upstream wellbore as saturated steam source |

b) Claims 12-19: Systems for power generation using superheated steam, including:

| | |
|---|---|
| **Claim 12:** | A system with cased wellbore and turbines for electricity generation |
| **Claim 13:** | The system receiving saturated steam from an upstream wellbore |
| **Claim 14:** | The system with well casing and boiler casings |
| **Claim 15:** | The system with first and second boiler casings for steam conveyance |

| **Claim 16:** | The system with specific cross-sectional area relationships |
| **Claim 17:** | The system where annular volume is the first fluid conduit |
| **Claim 18:** | The system with inverted cross-sectional area relationships |
| **Claim 19:** | The system with alternative fluid conduit configuration |

c) Claims 20-25: Methods for generating superheated steam, including:

| **Claim 20:** | The basic method of receiving saturated steam, conveying through cased wellbore to magma, and returning superheated steam |
| **Claim 21:** | The method conveying steam through annular volume between casings |
| **Claim 22:** | The method with non-corrugated inner casing portion at magma end |
| **Claim 23:** | The method with non-corrugated inner casing portion at surface end |
| **Claim 24:** | The method using upstream wellbore as steam source |
| **Claim 25:** | The method providing superheated steam to turbines for electricity |

## II.    The Defamation and Pattern of Harassment

23.    Greg E. Lindberg, one of the inventors of both patents, and Magma Power have invested substantial time and resources into developing the patented technology, establishing strategic partnerships globally, and engaging with government officials, agencies, and businesses to secure funding for implementation.

24.    Richard McDonald, Chief Strategy Officer and Business Development Officer of Magma Power since 2022, has direct knowledge of the company's operations, intellectual property portfolio, business relationships, and the events

giving rise to this lawsuit through his responsibilities for developing strategic partnerships, overseeing business development, representing Magma Power at industry conferences, and managing relationships with government officials and agencies.

25.    Beginning in October 2024, McDonald became aware of a coordinated campaign by David McBay and Thomas McBay of American GeoPower to spread false and defamatory statements about Magma Power through LinkedIn posts and other communications.

26.    On October 29, 2024, a cease-and-desist letter was issued by Magma Power's CEO, Levi Conner, to David and Thomas McBay of American GeoPower, addressing a defamatory LinkedIn post that contained false, misleading, and damaging information about Magma Power, its intellectual property, and its founders.

27.    The LinkedIn post falsely implied that Magma Power's technology and business practices were fraudulent or unreliable, statements made with knowledge of their falsity or reckless disregard for the truth.

28.    McDonald personally engaged in text message communications with Thomas McBay in which McBay made direct attempts to undermine Magma Power's business and damage its fundraising efforts. These communications revealed a deliberate strategy to harm Magma Power's reputation and business prospects. True and correct copies of these text messages are in Plaintiff's possession.

29.     At a recent geothermal industry conference, McDonald personally witnessed and experienced systematic harassment by David McBay, including: a. David McBay approaching multiple government officials and business contacts immediately after McDonald or other Magma Power representatives had spoken with them; b. David McBay engaging these contacts in discussions clearly aimed at discrediting Magma Power and its technology; c. David McBay attempting to physically separate one of Magma Power's representatives from McDonald so he could speak with her privately; d. Following David McBay's interventions, several previously interested parties expressed newfound skepticism about Magma Power's capabilities and reliability.

30.     This behavior was part of a clear pattern of harassment and interference with Magma Power's business relationships, not isolated conduct but rather a systematic effort to damage the company.

31.     Upon information and belief, Defendants GeoAlaska and Ignis have joined in this defamation, repeating and amplifying the false statements made by American GeoPower while simultaneously claiming rights to use the technology covered by the patents that belong exclusively to Magma Power.

32.     Paul Craig's statement that "We don't need Magma Power, LLC to drill into magma and superhot geothermal fluids because we have the patents from the McBays" demonstrates: a. GeoAlaska's knowledge that drilling into magma requires specific patent rights; b. GeoAlaska's reliance on false information from the McBays/American GeoPower; c. A coordinated effort between GeoAlaska and

American GeoPower to circumvent Magma Power's legitimate patent rights; d. Willful intent to infringe Magma Power's patents based on false claims of authorization.

### III.    The Patent Rights and Planned Infringement

33.    On August 4, 2025, Defendants GeoAlaska and Ignis issued a press release stating:

> "GeoAlaska, LLC, ("GeoAlaska") is pleased to announce that Chugach Electric Association, Inc. ("Chugach") has provided GeoAlaska with a non-binding letter of interest to acquire geothermal-sourced electricity pursuant to a long-term power purchase agreement ("PPA")... GeoAlaska, with its partner company, Ignis Energy, Inc., is exploring for sustainable baseload geothermal power at Augustine Island and Mt. Spurr -- both located on the west side of the Cook Inlet.  Augustine Island has emerged as GeoAlaska's leading prospect with an expected power generation capacity of 200+ MW."

A true and correct copy of Defendants' Press Release is attached hereto as **Exhibit C.**

34.    This press release constitutes clear evidence of Defendants' intent to drill into magma reservoirs and generate power using methods that would necessarily infringe all claims of both patents.

35.    Magma Power's patented technologies were successfully demonstrated in a laboratory setting, proving their viability and effectiveness, including: a. Methods for drilling through solid cap rock into molten rock; b.  Formation of obsidian casing through the use of drilling fluids that quench molten rock; c.  Heat exchange systems

that successfully extracted thermal energy from molten rock; d. Generation of steam from water circulated through the heat exchanger.

36.    Based on extensive industry knowledge and the technical requirements for drilling into magma, any attempt to drill into magma reservoirs and extract geothermal energy would necessarily require the use of methods and systems covered by Magma Power's patent portfolio.

37.    Specifically, any extraction of superhot geothermal fluid from the magma reservoirs at Mount Augustine or Mount Spurr would require the apparatus, systems, and methods covered by all claims of both patents.

38.    Upon information and belief, it is technologically impossible to extract superhot geothermal fluid from magma reservoirs without using the apparatus, systems, and methods covered by the claims of both patents, as these claims cover the only known viable technology for such extraction.

39.    Defendants have actual knowledge of both patents and Magma Power's exclusive rights, as evidenced by Paul Craig's statement acknowledging the need for patent rights to drill into magma.

40.    Despite this knowledge, Defendants have announced their intent to proceed with activities at Mount Augustine and Mount Spurr that would infringe all claims of both patents, relying on false claims of authorization from the McBays/American GeoPower.

**IV.    Business Harm to Magma Power**

41.    As a direct result of Defendants' defamatory statements and interference, Magma Power has lost multiple business opportunities, including, but not limited to the following:

a.    Potential investors who withdrew interest after being approached by Defendants;

b.    Government contacts who became skeptical of the technology after speaking with Defendants;

c.    Strategic partners who delayed or cancelled meetings based on false information spread by Defendants.

42.    The defamatory campaign has caused significant damage to Magma Power's reputation in the geothermal energy industry. In this close-knit community, reputation and credibility are crucial for business success.

43.    Defendants' announcement of plans to drill into magma using technology they falsely claim to have rights to use has created market confusion and undermined Magma Power's position as the legitimate patent holder for this revolutionary technology.

44.    The harm to Magma Power is ongoing and will continue unless Defendants are enjoined from their defamatory conduct and prevented from infringing Magma Power's patents.

45.    Based on Paul Craig's statement and other communications, it is clear that Defendants have actual knowledge of Magma Power's patent rights and the necessity of those rights for drilling into magma.

46.    Defendants' decision to proceed with their announced plans despite this knowledge demonstrates willful intent to infringe Magma Power's patents.

47.    The coordination between Defendants and American GeoPower to spread false information while planning patent infringement demonstrates bad faith and malicious intent.

## COUNT I
### (Defamation, Slander Per Se)

48.    Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

49.    Defendants entered into an agreement or understanding with American GeoPower to make false and defamatory statements about Magma Power and its patent rights in public forums, including social media and direct communications.

50.    From October 2024 through the present, Defendants, acting in concert with American GeoPower, made false and defamatory statements about Magma Power and its exclusive rights to the patents.

51.    These statements were materially false, and by publishing these false statements, Defendants acted with actual malice toward Plaintiff.

52.    By publishing the statements on the Internet and repeating them at industry conferences, Defendants knew or should have known that the false statements would be republished repeatedly by third parties to Plaintiff's detriment.

53.    The statements were made to undermine Magma Power's business and commercialization of its patented technology, knowing their falsity or with reckless disregard for their truth.

54. The statements were made without any privilege and are slanderous per se, as they directly impacted Magma Power's ability to conduct its business and license its patents.

55. As a direct result of Defendants' defamation, Plaintiff suffered presumed damages and actual injury, including, but not limited to, insult, pain, embarrassment, humiliation, emotional suffering, injury to its reputation, lost future earnings from the patents, diminished earning capacity, costs, and other out-of-pocket expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for presumed damages; actual damages, including lost profits and lost business opportunities related to the patents; mental anguish, distress, and humiliation; the costs of bringing this action; pre- and post-judgment interest; punitive damages; and such additional relief as this Court deems appropriate.

## COUNT II
## (Defamation, Libel Per Se)

56. Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

57. The defamatory LinkedIn posts and additional comments made as part of the post constituted libel per se, as they were made in writing and harmed Magma Power's business reputation and ability to commercialize its patented technology in a permanent form.

58. These libelous statements were intended to discredit Magma Power's technology and disrupt its relationships with key partners and investors.

59.     Defendants participated in and furthered this defamation by repeating and amplifying the false statements about Magma Power's patent rights.

WHEREFORE, Plaintiff demands judgment against Defendants for presumed damages; actual damages, including lost profits and lost business opportunities; mental anguish, distress, and humiliation; the costs of bringing this action; pre- and post-judgment interest; punitive damages; and such additional relief as this Court deems appropriate.

## COUNT III
## (Trade Libel)

60.     Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

61.     Defendants, acting in conjunction with American GeoPower, posted false statements about Magma Power's patent rights that they knew or should have known would likely induce others not to deal with Magma Power.

62.     The defendants' false statements and implications pertained to Magma Power's business, services, and offerings related to its patented technology.

63.     Defendants published the false statements intentionally, deliberately, and with actual malice.

WHEREFORE, Plaintiff demands judgment against Defendants for presumed damages; actual damages, including lost profits and lost business opportunities; mental anguish, distress, and humiliation; the costs of bringing this action; pre- and post-judgment interest; punitive damages; and such additional relief as this Court deems appropriate.

## COUNT IV

### (Tortious Interference with Business Relationships)

64.    Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

65.    The defendants' defamatory actions were intended to interfere with Magma Power's business relationships related to licensing and commercializing its patents, including those with potential investors, partners, and customers, such as Chugach Electric Association.

66.    As a result of these actions, Magma Power has suffered significant financial and reputational damage in its efforts to commercialize its patented technology.

WHEREFORE, Plaintiff demands judgment against Defendants for presumed damages; actual damages, including lost profits and lost business opportunities; mental anguish, distress, and humiliation; the costs of bringing this action; pre- and post-judgment interest; punitive damages; and such additional relief as this Court deems appropriate.

## COUNT V
### (Injurious Falsehood)

67.    Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

68.    Defendants made false statements designed to discredit Magma Power's technology and integrity, resulting in direct harm to Magma Power's business prospects.

69.     These false statements include claims that Defendants have rights to drill into magma through patents from American GeoPower, when in fact the exclusive rights to both patents belong to Magma Power.

WHEREFORE, Plaintiff demands judgment against Defendants for presumed damages; actual damages, including lost profits and lost business opportunities; mental anguish, distress, and humiliation; the costs of bringing this action; pre- and post-judgment interest; punitive damages; and such additional relief as this Court deems appropriate..

## COUNT VI
### (Patent Infringement - Direct Infringement of '383 Patent Claims 1-10)

70.     Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

71.     Magma Power holds exclusive rights to enforce Claims 1-10 of the '383 Patent, which cover pumping apparatus for boreholes extending to underground reservoirs of superhot geothermal fluid.

72.     Defendants have announced their intent to make and use the pumping apparatus claimed in Claims 1-10 of the '383 Patent by extracting geothermal fluid from magma reservoirs at Mount Augustine and Mount Spurr.

73.     Specifically, Defendants' announced activities would infringe Claims 1 through 10 of the '383 Patent as follows:

        a. Claim 1: By using a pumping apparatus with a well screen, slidable casing, and draw pipe system in magma boreholes

b.  Claim 2: By lowering the slidable casings to reposition them in the magma reservoir

c.  Claim 3: By using compressor systems with inlet pipes for pressure control

d.  Claim 4: By using compressed air as the compressed fluid

e.  Claim 5: By employing adjustable apertures in the casing end walls

f.  Claim 6: By using pneumatically-operated pipe collar seals

g.  Claim 7: By using lifts to change slidable casing depth

h.  Claim 8: By employing hydraulic rams or winch systems

i.  Claim 9: By incorporating pressure control valves in the system

j.  Claim 10: By maintaining well screens in unlined portions of the magma boreholes

74.  Upon information and belief, it is impossible to extract superhot geothermal fluid from the magma reservoirs without infringing Claims 1-10 of the '383 Patent.

75.  Defendants' infringement of Claims 1-10 is willful, as evidenced by their knowledge of Magma Power's patent rights and their stated intent to proceed based on false claims of authorization.

WHEREFORE, Plaintiff demands judgment that Defendants have announced intent to infringe and will infringe Claims 1-10 of the '383 Patent and seeks all

remedies available under 35 U.S.C. § 284, including actual damages, lost profits, reasonable royalties, and enhanced damages for willful infringement.

## COUNT VII
### (Patent Infringement - Direct Infringement of '383 Patent Claims 11-20)

76.    Plaintiff re-alleges and incorporates by reference paragraphs 1-75 as though fully set forth herein.

77.    Magma Power holds exclusive rights to enforce Claims 11-20 of the '383 Patent, which cover methods of pumping superhot geothermal fluid through boreholes extending to underground reservoirs.

78.    Defendants have announced their intent to practice the methods claimed in Claims 11-20 of the '383 Patent by implementing pumping operations at Mount Augustine and Mount Spurr.

79.    Specifically, Defendants' announced activities would infringe Claims 11 – 20 of the '383 as follows:

a.    Claim 11 by practicing the method of repositioning, securing, increasing pressure, and conveying SHGF

b.    Claim 12 by repositioning casings back to initial positions after extraction cycles

c.    Claim 13 by reducing pressure before sliding casings

d.    Claim 14 by using pressure control valves or expanding apertures for pressure reduction

e.    Claim 15 by actuating hydraulic rams for lowering operations

f.    Claim 16 by sealing cavities using adjustable apertures

g. Claim 17 by using pneumatically-operated pipe collar seals for sealing

h. Claim 18 by providing compressed fluid into casing cavities

i. Claim 19 by conveying compressed air through inlet pipes

j. Claim 20 by closing pressure control valves during air conveyance

80. The extraction of superhot geothermal fluid from magma reservoirs necessarily requires practicing all steps of the methods claimed in Claims 11-20 of the '383 Patent.

81. Defendants' infringement of Claims 11-20 is willful, as they have proceeded with full knowledge of the '383 Patent.

WHEREFORE, Plaintiff demands judgment that Defendants have announced intent to infringe and will infringe Claims 11-20 of the '383 Patent, and seeks all remedies available under 35 U.S.C. § 284.

## COUNT VIII
## (Patent Infringement - Direct Infringement of '278 Patent Claims 1-11)

82. Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

83. Magma Power holds exclusive rights to enforce Claims 1-11 of the '278 Patent, which cover cased wellbores for generating superheated steam.

84. Defendants have announced their intent to make and use the cased wellbore systems claimed in Claims 1-11 of the '278 Patent by constructing wellbores extending to magma reservoirs.

85.    Specifically, Defendants' announced activities would infringe claims 1-11 of the'278 Patent as follows:

    a.  Claim 1: By constructing a cased wellbore with fluid pathways, wellhead with drill stem aperture, and connectors for steam circulation with diameter differentials

    b.  Claim 2: By using well casings with boiler casings extending through them

    c.  Claim 3: By employing first and second boiler casings defining separate fluid conduits

    d.  Claim 4: By configuring casings with specific cross-sectional area relationships forming annular volumes

    e.  Claim 5: By utilizing the annular volume as the first fluid conduit

    f.  Claim 6: By implementing corrugated sidewalls at the magma end

    g.  Claim 7: By using non-corrugated sidewalls at the surface end

    h.  Claim 8: By applying insulation layers around the second boiler casing

    i.  Claim 9: By employing inverted cross-sectional area relationships

    j.  Claim 10: By using alternative fluid conduit configurations

    k.  Claim 11: By sourcing saturated steam from upstream wellbores

86.    It is impossible to generate superheated steam from magma reservoirs without infringing Claims 1-11 of the '278 Patent.

87.    Defendants' infringement is willful based on their knowledge of Magma Power's patent rights.

WHEREFORE, Plaintiff demands judgment that Defendants will infringe Claims 1-11 of the '278 Patent and seeks all remedies under 35 U.S.C. § 284.

## COUNT IX
### (Patent Infringement - Direct Infringement of '278 Patent Claims 12-19)

88.    Plaintiff re-alleges and incorporates by reference paragraphs 1-87 as though fully set forth herein.

89.    Magma Power holds exclusive rights to enforce Claims 12-19 of the '278 Patent, which cover systems for power generation using superheated steam.

90.    Defendants have announced their intent to construct and operate systems claimed in Claims 12-19 by developing a 200+ MW power generation facility.

91.    Specifically, Defendants' announced activities would infringe Claims 12-19 of the '278 Patent as follows:

   a.  Claim 12: By constructing a system with cased wellbores and turbines for electricity generation

   b.  Claim 13: By receiving saturated steam from upstream wellbores

   c.  Claim 14: By implementing well casings with boiler casing systems

   d.  Claim 15: By using dual boiler casings for steam conveyance

   e.  Claim 16: By configuring systems with specific cross-sectional area relationships

   f.  Claim 17: By utilizing annular volumes as fluid conduits

g. Claim 18: By implementing inverted cross-sectional area relationships

h. Claim 19: By using alternative fluid conduit configurations

i. Power generation from magma-sourced superheated steam necessarily requires the systems of Claims 12-19.

92.    Defendants' infringement is willful.

WHEREFORE, Plaintiff demands judgment and seeks all remedies under 35 U.S.C. § 284.

## COUNT X
## (Patent Infringement – Direct Infringement of '278 Patent Claims 20-25)

93.    Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

94.    Magma Power holds exclusive rights to enforce Claims 20-25 of the '278 Patent, which cover methods for generating superheated steam.

95.    Defendants have announced their intent to practice the methods claimed in Claims 20-25.

96.    Specifically, Defendants' announced activities would infringe Claims 20 – 25 of the '278 Patent as follows:

a. Claim 20: By practicing the basic method of receiving saturated steam, conveying through wellbores to magma with specific wellhead configurations

b.  Claim 21: By conveying steam through annular volumes between casings exposed to magma

c. Claim 22: By using non-corrugated inner casing portions at the magma end

d. Claim 23: By using non-corrugated inner casing portions at the surface end

e. Claim 24: By sourcing steam from upstream wellbores

f. Claim 25: By providing superheated steam to turbines for electricity generation

97.  These methods are essential for generating superheated steam from magma.

98.  Defendants' infringement is willful.

WHEREFORE, Plaintiff demands judgment and seeks all remedies under 35 U.S.C. § 284.

## COUNT XI
## (Patent Infringement - Induced Infringement of All Claims)

99.  Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

100.  Upon information and belief, Defendants, and each of them, intend to actively induce others, including contractors, drilling companies, equipment suppliers, and power purchasers like Chugach Electric Association, to practice the apparatus, systems, and methods claimed in all 45 claims of the '278 Patent and the '383 Patent (collectively, "Plaintiff's Patents").

101.    Defendants' press release announcing their geothermal projects constitutes inducement of others to participate in activities that would infringe all claims of Plaintiff's Patents.

102.    Defendants, and each of them, have specific intent to encourage infringement, as demonstrated by their false claims of having patent rights through American GeoPower and their public solicitation of partners for their infringing activities.

103.    By announcing a 200+ MW power generation project, Defendants, and each of them, are inducing suppliers to provide equipment and operators to practice methods that would infringe all claims.

WHEREFORE, Plaintiff demands judgment and damages for induced infringement of all 45 claims of Plaintiff's Patents as set forth in detail above.

## COUNT XII
### (Patent Infringement - Contributory Infringement of All Claims)

104.    Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

105.    Upon information and belief, Defendants, and each of them,  intend to provide equipment, components, and systems that are especially made for use in practicing all claims of both patents, with no substantial non-infringing use.

106.    Specifically, Defendants, and each of them, will provide or cause to be provided specialized equipment designed for magma reservoir exploitation, including well screens, slidable casings, draw pipes, compressor systems, adjustable apertures,

seals, lifting systems, pressure control valves, boiler casings, corrugated components, insulation systems, and steam conveyance systems.

107.    These components have no substantial non-infringing use, as they are specially designed for the extreme conditions of magma reservoir exploitation covered by Plaintiff's Patents.

108.    Defendants, and each of them,   know or should know, that such equipment and systems are especially made for use in infringement of all claims of Plaintiff's Patents.

WHEREFORE, Plaintiff demands judgment and damages for contributory infringement of all 45 claims of Plaintiff's Patents as set forth in detail above.

## COUNT XIII
### (Preliminary and Permanent Injunction)

109.    Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

110.    Plaintiff is entitled to preliminary and permanent injunctive relief because:

> a. Plaintiff is likely to succeed on the merits of its claims for infringement of both patents;
>
> b. Plaintiff will suffer irreparable harm absent an injunction;
>
> c. The balance of hardships favors Plaintiff; d.  An injunction serves the public interest.

111.    Plaintiff faces irreparable harm from Defendants', and each of them, ongoing defamation campaign and threatened infringement of all claims of both

patents, including lost business opportunities, erosion of market position, and damage to business relationships that cannot be adequately compensated through monetary damages.

112.   The balance of hardships strongly favors Plaintiff, as Defendants have no legitimate right to defame Plaintiff or infringe Plaintiff's Patents, while Plaintiff faces permanent damage to its exclusive rights in the patented technology.

113.   The public interest supports an injunction because protecting valid patent rights encourages innovation in critical clean energy technology and ensures fair competition.

WHEREFORE, Plaintiff seeks entry of preliminary and permanent injunctions enjoining Defendants, and each of them,  from:

      a.  Making any further defamatory statements about Plaintiff or its patent rights;

      b.  Drilling into magma or practicing any apparatus, systems, or methods covered by any claims of either patent;

      c.  Making, using, selling, or offering to sell any systems that would infringe any claims of either patent;

      d.  Practicing or inducing others to practice any methods that would infringe any claims of either patent;

      e.  Inducing or contributing to infringement of any claims of either patent;

      f.  Claiming any rights to the technology covered by either patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief against Defendants as follows:

A.    Enter judgment that Defendants have conspired to defame Plaintiff regarding its patent rights and have committed defamation, slander per se, libel per se, trade libel, tortious interference, and injurious falsehood;

B.    Enter judgment that Defendants have announced intent to infringe and will infringe all 20 claims of U.S. Patent No. 11,852,383 B2 and all 25 claims of U.S. Patent No. 12,326,278 B2 under 35 U.S.C. §§ 271(a), (b), and/or (c);

C.    Enter preliminary and permanent injunctions enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them, from:

- Making any further defamatory statements about Plaintiff or its patent rights;

- Drilling into magma and superhot geothermal fluids using any apparatus, systems, or methods covered by any claims of any patent owned by or licensed by Magma Power, LLC;

- Manufacturing, using, selling, or offering to sell any systems or services that infringe any claims of any patent owned by or licensed by Magma Power, LLC;

- Inducing or contributing to infringement of any claims of any patent owned by or licensed by Magma Power, LLC;

D.    Award $100 million in damages to compensate for Defendants' defamation and patent infringement, including lost profits and reasonable royalties, and enhanced damages under 35 U.S.C. § 284 for willful infringement;

E.    Award punitive damages for Defendants' malicious defamation;

F.    Find this case exceptional under 35 U.S.C. § 285 and award Plaintiff its costs, expenses, and attorney's fees;

G.    Award pre- and post-judgment interest as permitted by law; and,

H.    Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: September 24, 2025
Fort Lauderdale, Florida

Respectfully submitted,

/s/
Carl D. Berry (Florida Bar No. 81132)
The Strategic LegalGroup, PLLC
c.berry@thestrategiclegalgroup.com
300 S.E. 2nd Street, Sixth Floor
Fort Lauderdale, FL 33301
Telephone: (561) 910-0900
*Attorneys for Plaintiff*